## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ALL YEAR HOLDINGS LIMITED,<br><br>                        Debtor. | NOT FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 21-12051 (MG) |
| AYH WIND DOWN LLC, through Ofer Tzur and Amir Flamer, solely in their joint capacity as Claims Administrator,<br><br>                        Plaintiff,<br><br>ALEXANDER M. ENGELMAN,<br><br>                        Defendant. | Adv. Pro. Case No. 23-01196 (MG) |

## OPINION DENYING DEFENDANT ALEXANDER ENGLEMAN'S MOTION FOR ABSTENTION

*A P P E A R A N C E S:*

TWERSKY PLLC
*Counsel for Defendant*
747 Third Avenue, 32nd Floor
New York, New York 10017
By:   Aaron Twersky, Esq.
        Ilana Neufeld, Esq.
        Mia Guttmann, Esq.

CHAPMAN AND CUTLER LLP
*Counsel for AYH Wind Down LLC*
1270 Avenue of the Americas
New York, New York 10020
By:   Michael Friedman, Esq.
        David T. B. Audley, Esq.
        Eric S. Silvestri, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant Alexander Engelman's (the "Defendant" or "Engelman") motion for abstention (the "Motion," ECF Doc. # 11-1[1]) in the adversary proceeding filed by Plaintiff AYH Wind Down LLC ("Wind Down Co.") against Engelman (the "Adversary Proceeding").  In support of the Motion, the Defendant filed the (i) *Memorandum of Law In Support of Defendant Alexander Engelman's Motion for Abstention* (the "Support Memo.," ECF Doc. # 11-1) and (ii) the declaration of Defendant Alexander Engelman ("Engelman Dec.," ECF Doc. # 11-2.)  Wind Down Co. filed an objection to the Motion (the "Objection," ECF Doc. # 12) and Engelman filed a reply (the "Reply," ECF Doc. # 13).

Engelman argues that permissive abstention is proper because of the dominance of state law issues and the remoteness of this proceeding from bankruptcy.  But the fact that a state court *could* adjudicate this case does not necessarily mean that one *should*.  Efficiency, judicial economy, and, significantly, this Court's "virtually unflagging obligation" to exercise its jurisdiction demand that this proceeding remain before this Court.

The Court held a hearing on the Motion on March 26, 2024 (the "Hearing").  At the conclusion of the hearing, the Court denied the Motion and an Order was entered.  (ECF Doc. # 14.)  This Opinion explains the Court's reasons for the ruling.

## I.   BACKGROUND

### A. The Debtor's Bankruptcy

On December 14, 2021, All Year Holdings Limited ("AYH" or the "Debtor") filed a voluntary petition for relief under Chapter 11.  (AYH ECF Doc. # 1.)  The Chapter 11 plan was

---

[1] Unless otherwise noted, docket numbers refer to the adversary proceeding. Documents in the main bankruptcy proceeding, Case. No. 21-12051, are noted as "[Document Name]," AYH Docket ECF Doc. # [•]."

2

confirmed on January 31, 2023 ("Plan," AYH ECF Doc. # 352). Pursuant to the Plan and the confirmation order ("Confirmation Order, ECF Doc. # 352), certain of the Debtor's property vested in Wind Down Co., including the cause of action brought in the adversary proceeding described below. (Complaint at 2.)

### B. The Adversary Proceeding

#### 1. The Alleged Breach

The Debtor and Engelman have had a business relationship since around 2009. (Support Memo. at 2; Engelman Dec. ¶ 3.) On November 10, 2023, Wind Down Co. filed the Complaint against Engelman for alleged breach of a promissory note. The Complaint alleges that Engelman executed a promissory note in the principal amount of $3,000,000.00 in favor of the Debtor, which matured on April 4, 2018, with interest computed at an annualized rate of fifteen percent. (Complaint ¶¶ 12–4.) Wind Down Co. alleges that the promissory note contained an unequivocal and unconditional promise by Engelman to repay the principal and interest amounts on or before the maturity date, which Engelman failed to do. (Complaint ¶¶ 20, 22.)

On February 1, 2022, the Debtor issued a written demand for payment to Engelman. (*Id.* ¶ 15 (citing AYH ECF Doc. # 446-2).) At the time of the demand, the Debtor calculated the amount of debt owed as $5,205,000.00, consisting of $3,000,000.00 of outstanding principal and $2,205,000.00 in outstanding interest. (Complaint ¶ 16 (citing AYH ECF Doc. # 446-2).) According to Wind Down Co., interest has continued to accrue since then, and as of November 9, 2023, the amount due is no less than $6,012,500.00, consisting of $3,000,000 of outstanding principal and $3,012,500 in outstanding interest. (*Id.* ¶ 17.)

The Complaint asserts that jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 157 and 1334, the Amended Standing Order of Reference M-431, dated January 31, 2023

3

(Preska, C.J.), and the Court's retention of jurisdiction pursuant to the Plan and paragraph 27 of the Confirmation Order. (*Id.* ¶ 10.) Although Wind Down Co.'s Complaint alleged that the Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), it did not argue this point in the Objection or at the Hearing, and the Court agrees with Engelman that the Court has only "related-to" jurisdiction under section 1334.

### 2. Claim Asserted and Relief Requested

Wind Down Co. asserted one cause of action against Engelman for alleged breach of a promissory note. Wind Down Co. seeks (i) damages not less than $6,012,500.00 as well as all past, present, and future accrued and accruing interest, and post-judgment interest, (ii) an award in favor of Plaintiff for its attorneys' fees and costs, and (iii) any further relief the Court deems just and proper. (Complaint ¶ 22.)

**C. The Motion**

Engelman describes the Complaint as "completely untrue," stating that (i) a promissory note was never executed regarding the loan, and the one proffered by Wind Down Co. is a forgery and (ii) a separate, oral loan was made and has been repaid in full.[2] (Support Memo. at 2.) Regardless, Engelman asserts that the doctrine of abstention allows the Court to abstain from adjudicating this action. (*Id.*) Engelman argues that several relevant factors weigh in support of this conclusion.

*First*, Engelman argues that state law issues predominate in the Adversary Proceeding. (*Id.* at 4.) Engelman emphasizes that "there are no substantive issues in the matter that involve issues of bankruptcy law." (*Id.*) Rather, "the substantive issues are contractual and rest on New York state law." (*Id.*)

---

[2] The Support Memo. does not, however, question that Wind Down Co. succeeded to the claim or that it has standing to initiate the Adversary Proceeding.

4

*Second*, Engelman argues there is no independent basis for Bankruptcy Court jurisdiction other than section 1334. (*Id.* at 4.) Engelman asserts that the Adversary Proceeding is not a core proceeding and does not arise from the title 11 bankruptcy matter, and thus section 157(b) does not offer grounds for jurisdiction. (*Id.* at 5.) Engelman asserts that, even if the Court were to find this to be a core proceeding, permissive abstention is still applicable. (*Id.* at 6.)

*Third*, Engelman argues there is no relation between the Adversary Proceeding and the main bankruptcy case: "[t]he issues that will be brought up in this Adversary Proceeding are clearly contract law and fraud, and [are] unrelated to the main bankruptcy case." (*Id.*)

*Fourth*, Engelman argues that it is feasible to allow "this isolated, contractual claim" to be severed from the core bankruptcy matter, "as it does not have anything to do with the bankruptcy matter." (*Id.* at 8.)

*Finally*, Engelman argues that the presence of non-debtor parties in the Adversary Proceeding, namely himself, weighs in favor of abstention. (*Id.*)

**D.  The Objection**

Wind Down Co.'s objection argues that the Court's experience with the Debtor's bankruptcy proceedings and Chapter 11 case, as well as its experience administering similar claims, "all suggest that this case's best chance at swift and efficient administration is in Bankruptcy Court." (Objection at 1.)

Specifically, Wind Down Co. asserts that a majority of the relevant factors weigh against permissive abstention, particularly the following[3]: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (3) the difficulty or unsettled

---

[3]  The factors are taken from and use the numbering found in *Cody, Inc. v. Cnty. of Orange*, 281 B.R. 182, 190–191 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part*, 338 F.3d 89 (2d Cir. 2003).

5

nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping and one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties. (Objection at 4.) Wind Down Co. also argues that Defendant's cited factors do not outweigh those that favor dismissal of the Motion.

**E.  The Reply**

The Reply reiterates its arguments that factors (1), (2), (3), (5), (6), (7), (8) and (12) weigh in favor of abstention.

Engelman argues that factor (1), efficiency of administration, weighs in favor of abstention because, as a "related to" proceeding, the Court could only render a report and recommendation and not a final decision, which would not serve judicial economy. (Reply at 3.) Engelman also contests that abstention would result in needing to bring an unfamiliar court up to speed, because the only claim at issue is not relevant to the bankruptcy. (*Id.* at 3–4.)

Engelman asserts that, by not discussing it, Wind Down Co. has conceded factor (2), the extent to which state law predominates. (*Id.* at 5.)

Engelman argues that Wind Down Co.'s analysis of factor (3), the difficulty or unsettled nature of the state law, is mistaken because "the fact that the claims are straightforward is not a reason for the case to proceed in federal court." (*Id.* (citing *v. Lehman Bros. Real Est. Assocs. III, L.P.*, 496 B.R. 706, 713 (S.D.N.Y. 2013).)

Engelman asserts that factors (5) and (6) favor abstention because the Adversary Proceeding, based on a prepetition contract with no impact on the core bankruptcy functions, is

6

not a core proceeding nor does it arise under title 11. (*Id.* at 6.) Engelman argues that the Adversary Proceeding only involves contract and fraud claims, and Wind Down Co.'s argument that it may be relevant to the bankruptcy is merely speculation. (*Id.* at 6–7.) Further, Engelman argues, because the Plan has been confirmed, abstention would not amount to abdication of the Court's role. (*Id.* at 7.)

## II. LEGAL STANDARD

### A. Jurisdiction

District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

Non-core proceedings, such as the claim in this case, "encompass 'related to' proceedings whose claims do not arise in a bankruptcy case or under the Bankruptcy Code, but whose outcome nevertheless may have a 'conceivable effect' on the bankruptcy case." *In re George Washington Bridge Bus Station Dev. Venture LLC*, No. 19-13196 (DSJ), 2022 WL 1714176, at *5 (Bankr. S.D.N.Y. May 25, 2022). Under 28 U.S.C. § 157(c)(1), the bankruptcy court may hear a non-core proceeding that is related to a case under title 11, but "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

The defendant's answer was filed in this case on February 15, 2024. (ECF Doc. # 11.) The answer did not contain a jury demand. Any written jury demand was required to be served no later than 14 days after the answer—February 29, 2024. *See* FED. R. CIV. P. 38(b)(1).

7

Therefore, the right to jury trial has been waived. If a trial is required, the bankruptcy court can enter proposed findings of fact and conclusions of law.

Generally, before plan confirmation, "a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (internal quotation marks omitted)). As explained below, after plan confirmation, the scope of bankruptcy court jurisdiction may vary depending on whether the debtor was reorganized or liquidated.

1. Post-confirmation Jurisdiction

Once a plan of reorganization is confirmed, the relevant inquiry may change. The Bankruptcy Code does not expressly limit the bankruptcy court's jurisdiction post-confirmation, however, "most courts agree that 'once confirmation occurs, the bankruptcy court's jurisdiction shrinks.'" *In re Ener1, Inc.*, 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016) (citing *Gen. Media v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005)).

a. Reorganized Debtors

Where the debtor has been reorganized, the "close nexus" test applies. *See Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 F. App'x 134, 137 (2d Cir. 2011); *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Courtyard)*, 729 F.3d 1279, 1289 (9th Cir. 2013) ("[A] close nexus exists between a post-confirmation matter and a closed bankruptcy proceeding sufficient to support jurisdiction when the matter 'affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan.'" (citing *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005)).

8

The "close nexus" test has two requirements: "First the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute." *Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009) (quoting *Krys v. Sugrue*, No. 08 Civ. 7416 (GEL), 2008 WL 4700920, at *5–6 (S.D.N.Y. Oct. 23, 2008)). The "close nexus" test applies post-confirmation in reorganization cases because "it is assumed the reorganized debtor is becoming self-sufficient, and no longer needs umbrella protection from the bankruptcy court. Additionally, there is no estate, as property reverts to the reorganized debtor." *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011).

  b. *Liquidating Debtors*

On the other hand, "courts have acknowledged that, where a debtor's plan is a liquidating plan, the bankruptcy court's role post-confirmation does not diminish, particularly where the debtor seeks to commence litigation to collect assets for the benefit of its creditors. *In re Lehman Bros. Holdings Inc.*, 2018 WL 3869606, at *14; *see also Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 437 B.R. 88, 97–98 (S.D.N.Y. 2010) ("[W]here a debtor's plan is a liquidating plan, and the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend, the bankruptcy court's post-confirmation jurisdiction is more broad because its jurisdiction relates directly to core functions of the bankruptcy court and its exercise of jurisdiction does not require the bankruptcy court to supervise a newly reorganized business.") (citation and internal quotation marks omitted), *aff'd*, 448 F. App'x 134 (2d Cir. 2011). Where a plan of reorganization provides for liquidation of the debtor, some courts apply the "close nexus" test while others apply the

9

"conceivable effect" test. *See Lehman Bros. Holdings Inc. v. 1st Advantage Mortg., LLC (In re Lehman Bros. Holdings Inc.)*, 2018 WL 3869606, at *13 (Bankr. S.D.N.Y. Aug. 13, 2018) ("The applicability of the 'close nexus' test rather than the 'conceivable effects' test 'is an open question in the Second Circuit.'" (citing *Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc. (In re Residential Cap., LLC)*, 519 B.R. 593, 600 (S.D.N.Y. 2014)); *see also Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 Civ. 1927 (RJS), 2012 WL 967582, at *15 (S.D.N.Y. Mar. 13, 2012) ("Significantly, courts in this district haver reached different conclusions as to whether the close nexus test should be applied."). *Compare Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, No. 11 Civ. 6212 (BSJ), 2011 WL 6778473, at *4 (S.D.N.Y. Dec. 20, 2011) (declining to adopt the "close nexus" test), *with In re Gen. Media, Inc.*, 355 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (adopting the "close nexus" test).

The First Circuit, on the other hand, has "concluded that a bankruptcy court's jurisdiction should not shrink post-confirmation in a liquidation case because 'a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court. Any litigation involving such a debtor thus relates much more directly to a proceeding under title 11.'" *In re Ener1, Inc.*, 558 B.R. at n.2 (quoting *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005).

In this case, Wind Down Co. is liquidating the Debtor's remaining assets to maximize the recoveries of creditors.

**B.  Permissive Abstention**

Pursuant to 28 U.S.C. § 1334(c)(1), whether a bankruptcy court should adjudicate an adversary proceeding is subject to permissive abstention principles:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

10

28 U.S.C. § 1334(c)(1).

The movant bears the burden of establishing that permissive abstention is warranted in the face of the "virtually unflagging obligation" of federal courts to exercise their jurisdiction. *Residential Funding Co. LLC v. UBS Real Estate Sec., Inc. (In re Residential Cap., LLC)*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014). There is a presumption against abstention and courts should be "sparing in their exercise of discretionary abstention." *Id.*

Courts consider twelve factors when deciding whether to abstain from hearing a proceeding that is "related to a case under title 11." *See* 28 U.S.C. § 1334(c)(1); *see also In re Old Carco LLC*, 636 B.R. 347, 360 (Bankr. S.D.N.Y. 2022) (citing *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 512 (S.D.N.Y. 2015)) ("Courts in this district consider twelve factors when determining whether to permissively abstain under section 1334(c)(1).").

The factors to be considered in connection with determining a request for permissive abstention are:

1. the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficulty or unsettled nature of the applicable state law;

4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7. the substance rather than the form of an asserted core proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

11

9. the burden of the court's docket;

10. the likelihood that commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

11. the existence of a right to a jury trial; and

12. the presence in the proceeding of non-debtor parties.

*Cody, Inc. v. Cnty. of Orange*, 281 B.R. 182, 190–191 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part*, 338 F.3d 89 (2d Cir. 2003).

In considering whether permissive abstention is appropriate, courts have "considered one or more (not necessarily all) of [the] twelve factors." *Taub v. Taub*, 413 B.R. 81, 92–93 (Bankr. E.D.N.Y. 2009) (internal citations and quotation marks omitted); *see also Cody, Inc. v. Cnty. of Orange*, 281 B.R. at 190. Accordingly, the Court "need not plod through a discussion of each factor in the laundry lists developed in prior decisions," nor should analysis be "mechanical or a mathematical exercise." *In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008). Rather, "[t]he factors largely ask the Court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts." *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 713 (S.D.N.Y. 2013). Ultimately, the inquiry "involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances." *In re Janssen*, 396 B.R. at 636 (quoting *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004)).

### III.   DISCUSSION

For the reasons below, permissive abstention is not warranted here.[4]

**A. The Court Has Related-to Jurisdiction**

As outlined above, there is no clear answer from the Second Circuit whether the "close nexus" test applies in a liquidation. However, this Court has previously stated that it follows the First Circuit's conceivable effects test in a liquidating case. *See In re Ener1, Inc.*, 558 B.R. at 96 n.2 ("In a liquidation case, I have followed the First Circuit and applied the conceivable effect test.") (citing *Boston Reg'l Med. Ctr.*, 410 F.3d at 107). The Court will do so here.

*Boston Medical* held that "when a debtor (or a trustee acting to the debtor's behoof) commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a liquidating plan of reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation." In fact, "Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the *entire universe of matters* connected with bankruptcy estates." *Id.* at 105 (emphasis added). Further, there exists a powerful policy interest in favor of this Court exercising its jurisdiction: "the strong federal policy in favor of the expeditious liquidation of debtor corporations and the prompt distribution of available assets to creditors"; "[t]his policy is furthered by concentrating in a single forum any litigation that will impede or advance that goal." *Id.*; *see In re Holiday Mart, Inc.*, 715 F.2d 430, 435 (9th Cir. 1983); *In re Catridge Television, Inc.*, 535 F.2d 1388, 1390 (2d Cir. 1976).

Wind Down Co. is precisely the type of entity contemplated by *Boston Medical*, an entity acting "to the debtor's behoof," whose litigation proceeds will inure to the benefit of creditors.

---

[4] The Defendant does not argue that mandatory abstention is applicable. (*See generally* Support Memo.)

13

Further, even if the stricter "close nexus" test applied, the claim at issue satisfies the standard. The claim at issue is:

> precisely [a] cause[] of action that w[as] transferred by the [Debtor] to the Litigation Trust pursuant to the Plan and the Litigation Trust Agreement. The Trustee's claims thus arise under the Plan, and prosecution of this action directly implicates the implementation and execution of the confirmed plan and incorporated litigation trust agreement. Under the governing legal standard, these facts are sufficient to establish the close nexus required for post-confirmation jurisdiction."

*Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432, 444 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). Accordingly, the Court has related-to jurisdiction. The Plan provides that the Court retained jurisdiction for matters related to the Wind Down Co.:

> PP. Retention of Jurisdiction. This Court may properly and, upon the Effective Date, shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, including, without limitation, any rights, Claims, or *Causes of Action* held by or accruing to the Debtor, the Reorganized Debtor, the Plan Administrator, or *Wind-Down Co* pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory, including, without limitation, Avoidance Actions, and the other matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

(Confirmation Order at 22 (emphasis added).)

### B. The Relevant Factors Weigh Against Abstention

At base, Engelman's argument is that state law claims predominate and do not implicate or involve the bankruptcy. However, as Wind Down Co. points out, the state law issues are the garden-variety type that the Bankruptcy Court can easily administer. Based on the Court's history and familiarity with the characters at play, review of the factors and "common sense" caution against abstention.

Courts need not mechanically apply the twelve factors to be considered in connection with determining a request for permissive abstention. *See Taub v. Taub*, 413 B.R. 81, 92–93

14

(Bankr. E.D.N.Y. 2009); *see also In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008). However, review of the relevant factors provides a useful outline for the most compelling reasons that permissive abstention is unwarranted.

1. Efficiency

Wind Down Co. correctly points out that abstention would require getting a state court up to speed with the convoluted history of this case. (Objection at 4.) Engelman asserts that this is false, because the adversary proceeding has "no relevance" to the bankruptcy, as it pertains only to fraud and contract claims. (Reply at 3–4.) However, as outlined above, the Adversary Proceeding in fact has a close nexus with the bankruptcy. A state court would, indeed, need to catch up on this history of this case, while this Court, on the other hand, is intimately familiar with the facts and players. Hence, this factor disfavors abstention.

2. State Law Issues

The issues here are based purely on state law but are simple and straightforward. (*See* Objection at 5 ("A breach of contract claim represents one of the most familiar concepts in all of civil law, and the contract in this case—a matured, unpaid promissory note—is among the most straightforward examples of a contractual breach.").) The claims here are "straightforward common-law claims that do not involve arcane or idiosyncratic provisions of state law that would 'warrant abstention based on comity concerns.'" *Refco*, 628 F. Supp. 2d at 446 (citing *N.Y.C. Emples. Ret. Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.)*, 293 B.R. 308, 332 (S.D.N.Y. 2003).) Applying the prior logic of this Court, "[w]hile state law issues predominate, the contract law issues are not difficult or unsettled, and are the type of issues that this Court regularly adjudicates." *In re Lebenthal Holdings, LLC*, No. 17-13337 (MG), 2018 WL 3629900, at *5 (Bankr. S.D.N.Y. July 27, 2018).

Engelman replies that Wind Down Co. has misanalysed this factor, because the fact that the claim is "straightforward is not a reason for the case to proceed in federal court." (Reply at 5 (citing *Fried v. Lehman Bros.*, 496 B.R. at 713).) Engelman is attempting to obfuscate the logic. If the state law is unsettled, that counsels towards abstention. If the caselaw is straightforward, it may not be a strong force pushing against abstention, but it clears the path forward for the bankruptcy court to retain jurisdiction.

3. <u>Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case</u>

As discussed above, there is a close nexus between the Adversary Proceeding and the bankruptcy. The claim at issue "quite literally would not exist but for the Plan and the Investment Agreement it animates." (Objection at 6; *see also Refco*, 628 F. Supp. 2d at 444.) Engelman's defense—that the note is a forgery, but he loaned the same amount via oral agreement, which was then paid back—strongly foreshadows the possibility that this case may "take familiar factual turns" related to the main bankruptcy case. (Objection at 6.) Engelman's only reply is that the action "has no relation" because it is based on contract and fraud claims. (Motion at 8.) This is unavailing, for reasons explained above. Accordingly, this factor strongly disfavors abstention.

4. <u>Feasibility of Severing State Law Claims from Core Bankruptcy Matters</u>

The eighth factor asks bankruptcy courts to consider whether the state law claims asserted in the adversary proceeding "may be severed from the core bankruptcy matters, so that judgment may be entered in state court with enforcement to be carried out in this forum." *Taub*, 413 B.R. at 94; *see also Allstate Ins. Co. v. Ace Sec. Corp.*, 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 17, 2011) ("While federal district courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims.").

16

Here, only state law claims are alleged, and thus this factor would weigh in favor of abstention. This is Engelman's strongest argument. But just because a state court *could* adjudicate the issue does not mean it *should*—the bankruptcy court has a "virtually unflagging" obligation to exercise its jurisdiction. *In re Residential Cap., LLC*, 515 B.R. at 67. For all the reasons discussed above, this matter is better adjudicated in this Court than in state court.

5. Other Factors

The fourth factor weighs against abstention; there is no related proceeding in state court or other non-bankruptcy court. The fifth, seventh, ninth, tenth, eleventh and twelfth factors are either not relevant in this case or do not weigh heavily in favor of one side or the other.

## IV.    CONCLUSION

Defendant argues that because state law claims predominate and do not implicate or involve bankruptcy, a state court is the proper forum for this issue. The claim asserted in the Complaint is property of the estate, properly asserted in this Court by AYH Wind Down. Although a state court *could* adjudicate this issue, this case presents no narrow or extraordinary circumstances that counsel abstention. "[C]ommon sense dictates the conclusion that the Bankruptcy Court is the proper forum for resolving these disputes." *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No 07 Civ. 4634 (GEL), 2007 U.S. Dist. LEXIS 90482, 2007 WL 4323003, at *6 (S.D.N.Y. Dec. 10, 2007).

17

For the reasons explained above, the Motion was **DENIED,** and the Order has already been entered.

Dated:   April 3, 2024
        New York, New York

                                              *Martin Glenn*
                                         MARTIN GLENN
                            Chief United States Bankruptcy Judge