CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Michael Friedman
David T. B. Audley
Eric S. Silvestri

*Counsel to AYH Wind Down LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re:                                                      :    Chapter 11
                                                            :
ALL YEAR HOLDINGS LIMITED,                                  :    Case No. 21-12051 (MG)
                                                            :
                    Debtor.                                 :
                                                            :
                                                            :
------------------------------------------------------------X
AYH Wind Down LLC, through Ofer Tzur and                    :
Amir Flamer, solely in their joint capacity as              :
Claims Administrator                                        :
                                                            :
                    Plaintiff,                              :
                                                            :
ALEXANDER M. ENGELMAN,                                      :    Adversary No. 23-01196-mg
                                                            :
                    Defendant.                              :
                                                            :
------------------------------------------------------------X

**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

**INTRODUCTION**

Plaintiff AYH Wind Down LLC's (*"Wind Down Co"* or *"Plaintiff"*) case against Defendant Alexander Engelman (*"Defendant"* or *"Mr. Engelman"*) began with the straightforward allegation that Defendant took a loan of $3,000,000 from the Debtor and failed to repay that promissory note (the *"Note"*) upon maturity several years ago. Since Mr. Engelman

first answered the complaint earlier this year, the case centered on his allegation that he had not actually signed the promissory note, and the parties conducted document discovery surrounding that theory. However, during the deposition of Yoel Goldman on October 29, 2024, Mr. Engelman presented a new defense. Specifically Mr. Engelman disclosed, for the first time, a secret "partnership agreement," in Yiddish, purportedly between himself and Mr. Goldman from either 2013 or 2014, that he claims entitled him to a share of the "profits and losses" from several of Mr. Goldman's real estate investment properties. When Mr. Goldman was asked if he ever disclosed this "partnership agreement" to anyone at the Debtor or its creditors, Mr. Goldman invoked his Fifth Amendment rights and declined to answer.

Plaintiff then had this document translated into English. Following review of the the English translation, Plaintiff now has need to amend its complaint, specifically to seek claims of fraudulent transfer related to the naked fraud against the Debtor and its creditors, as well as claims in the alternative for unjust enrichment and "money had and received."

## BACKGROUND

### I.    THE BANKRUPTCY CASE

On December 14, 2021 (the *"Petition Date"*), the Debtor filed a voluntary bankruptcy petition under chapter 11 of title 11 of the United States Bankruptcy Code (the *"Bankruptcy Code"*), which initiated the above-captioned Bankruptcy Case No. 21-12051 (MG) (the *"Main Case"*). Prior to the effectiveness of its plan of reorganization the Debtor was a British Virgin Islands real estate development holding company whose portfolio included approximately 1,648 residential units and 69 commercial units mainly located in Brooklyn, New York, which had, on the petition date, an aggregate net book value of over a billion dollars. Declaration of Assaf Ravid, Main Case ECF No. 4 at ¶ 6. As of the Petition Date, the Debtor had approximately $1.6 billion

in outstanding funded debt obligations comprised of approximately $800 million in bonds and $760 million in property-level mortgage debt. *Id.*

The Debtor was founded on September 17, 2014 by its sole shareholder, Mr. Yoel Goldman (*"Mr. Goldman"*), who was the manager of the Debtor's business operations until shortly before the petition was filed. *Id.* at 6. Mr. Goldman's conduct and operation of the Debtor was and remains a source of tension, as he had, prior to the Petition Date, previously taken control of the Debtor's Board of Directors and authorized payments satisfying obligations of the Debtor he had also personally guaranteed. *Id.* at ¶ 10.

On January 31, 2023, following extensive and complex negotiations, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (the *"Confirmation Order"*) (Main Case ECF No. 352) confirming the Third Amended Chapter 11 Plan of Reorganization (the *"Plan"*) (Main Case ECF No. 289). Paragraph 27 of the Confirmation Order specifically includes the Bankruptcy Court's retention of jurisdiction over "any rights, Claims, or Causes of Action held by or accruing to the Debtor, the Reorganized Debtor, the Plan Administrator, or Wind-Down Co[.]" Confirmation Order ¶ 27. As part of the Debtor's reorganization, the Plan transferred certain of the Debtor's legal claims to AYH Wind Down LLC, for the purpose of recovering additional property for distribution to creditors. Main Case ECF No. 289. Under the Plan Administration Agreement, which was executed in conjunction with the effectiveness of the Plan, Ofer Tzur and Amir Flamer were jointly appointed "Claims Administrator" for the purposes of administering and managing AYH Wind Down LLC's prosecution of the Debtor's claims. The Plan Administration Agreement further vests in the Claims Administrator complete authority to "control and exercise authority over the Avoidance Actions and Causes Action vested in Wind-Down Co pursuant to the Plan, and over the litigation, management and disposition thereof." Accordingly, on the Effective Date of the Plan, the Debtor's claims against third parties generally

became the property of AYH Wind Down LLC, as administered by the Claims Administrator. This adversary case (the *"Adversary Proceeding"*) is one of those claims formerly belonging to the Debtor.[1]

## II.    THE ADVERSARY PROCEEDING THUS FAR

Plaintiff initiated this Adversary Proceeding for a single breach of contract count against Defendant Alexander Engelman on Novemebr 10, 2023. The Adversary Complaint alleged that on or around April 4, 2018, Mr. Engelman executed a promissory note (the *"Note"*) in favor of the Debtor in the original principal amount of $3,000,000 that he failed to repay, which obligation grew to what is now alleged to be no less than $6,472,500 consisting of $3,000,000 of outstanding principal and $3,472,500 in outstanding interest. *See* Adv. Pro. ECF No. 1 (Adversary Complaint).

Defendant filed his Answer on February 15, 2024. Adv. Pro. ECF No. 10. The Answer denied almost all of the allegations of the Adversary Complaint and raised no affirmative defenses. *Id.* The Bankruptcy Court then entered a Case Management Order following an initial status conference on March 26, 2024. Adv. Pro. ECF No. 15. Plaintiff served document requests on Defendant on May 6, 2024. Declaration of Eric Silvestri ¶ 4 (*"Silvestri Decl."*) Defendant made his initial document production on July 10, 2024. That production did not contain any purported partnership agreement between Mr. Engelman and Mr. Goldman. Silvestri Decl. ¶ 5.

Defendant sat for a deposition on July 17, 2024. Silvestri Decl. Ex. 1. During that deposition, Mr. Engelman confirmed that he had in fact borrowed $3,000,000 at 15% interest, but that his obligation to repay those amounts were reduced each time he was owed distributions from the Debtor. Silvestri Decl. Ex. 1 (Engelman Dep. pp 23, 118–125). Mr. Engelman testified that he was a member of various property-level LLCs with Mr. Goldman and that is what entitled him

---

[1] Plaintiff's claim is analogous to that of a liquidating trustee. *See, e.g.*, *In re Residential Capital, LLC*, 519 B.R. at 600 ("The confirmed plan of liquidation expressly preserves RFC's claims and transfers them to the liquidating trust to prosecute . . . RFC's claims in this action are such transferred claims, and any funds recovered will be distributed to the creditors of the estate.").

to those distributions. *Id.* However, that was simply not true for a vast majority of the Debtor's property-level LLCs. Mr. Engelman's name is not on capitalization tables, member lists, manager lists, or in any of the Debtor's distribution ledgers, all of which the Debtor gathered and produced to Defendant following Defendant's testimony.

The full picture of Mr. Engelman's defense only recently came to light during the deposition of Mr. Yoel Goldman on October 29, 2024, during which Mr. Engelman's attorney showed Mr. Goldman a Hebrew document that Mr. Engelman had not produced in discovery previously. Silvestri Decl. ¶ 6. Mr. Goldman testified that this agreement, which only Mr. Goldman signed in either 2013 or 2014, documented an undisclosed partnership with Mr. Engelman that, according to him, entitled Mr. Engelman to pro-rated shares of the "profits and losses" from various LLCs. Silvestri Decl. ¶ 7.[2] Following Mr. Goldman's deposition, Plaintiff quickly engaged a translation service for a certified English translation. Silvestri Decl. ¶ 8. Plaintiff received that certified translation on November 11, 2024, and produced the translated documents to Defendant on the same day. Silvestri Decl. ¶ 9. A copy of the English translation is attached to the Silvestri Declaration. With the benefit of both the English translation and Mr. Goldman's testimony, several things stand out regarding this undisclosed partnership agreement.

First, this undisclosed partnership agreement predates the Debtor's existence and therefore cannot possibly create obligations *of the Debtor* to Mr. Engelman. At best, it creates a personal obligation from Mr. Goldman to Mr. Engelman—a situation that is by now familiar to the Court from the Silberstein adversary case. Second, this undisclosed partnership agreement was, by its terms, secret. Specifically, it included a term that Mr. Engelman's share would not appear on any operating agreements or other documents, but that this agreement would nonetheless control over any other document in existence. Third, Mr. Engelman did not sign this agreement, only Mr.

---

[2]  At the time of filing, a transcript of Mr. Goldman's deposition had not yet been delivered to Plaintiff's counsel.

Goldman did. Fourth, and most tellingly, Mr. Goldman invoked his Fifth Amendment rights and refused to answer questions regarding whether he had ever disclosed this agreement to anyone at All Year or the Debtor's creditors, including its bondholders, immediately raising the specter of fraud, both on the Debtor and its creditors.

In light of these revelations and this newly disclosed document, Plaintiff seeks to amend its complaint to attack the secret partnership agreement and the purported "profits and losses" that Mr. Engelman claims reduced his liability on the Note to zero as fraudulent transfers. In what is becoming a pattern upon examining Mr. Goldman's business practices, it appears he has once again siphoned the Debtor's assets away to pay off his personal obligations to his friend.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a), made applicable through Rule of Bankruptcy Procedure 7015, provides that a party may amend its pleading with leave of court, which should be "freely give[n] . . . when justice so requires." In keeping with the dictates of Rule 15, courts in the Second Circuit have liberally and routinely granted leave to amend a pleading upon a timely request to do so. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (explaining that leave to amend should be freely granted when justice so requires unless it would be futile).

## ARGUMENT

**I.    THE COURT SHOULD GRANT PLAINTIFF LEAVE TO AMEND THE COMPLAINT**

This motion presents the classic need to amend a pleading following factual revelations in discovery, which began with the Defendant's deposition testimony but only fully came to light with the production of the secret "partnership agreement" during Mr. Goldman's testimony on October 29, 2024. With the benefit of that information and document, Plaintiff should now be free to confront Mr. Engelman's theory that his liability was reduced to account for his share of the

"profits" for what it is: a fraud by which Mr. Goldman used the Debtor's funds pay off his own personal obligations to Mr. Engelman.

Plaintiff brings this motion only weeks from when it first learned of the existence of the undisclosed partnership agreement, and within one day of receiving the English translation of the secret "partnership agreement."  Neither the claims to void those fraudulent transfers nor the alternative claims will prejudice Defendant, as the amendment relates only to the Defendant's defenses, which he has already had nearly a year of discovery to explore.  In fact, it was Defendant's counsel who first raised the secret partnership agreement with Mr. Goldman during a deposition that Defendant has sought.  If any prejudice were to arise, it would be if the Plaintiff were not permitted to amend its complaint to address this new information.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this Motion to Amend the Complaint and grant such other relief as may be just and proper.  A copy of the proposed First Amended Adversary Complaint is attached hereto as Exhibit A and a redline showing the changes from the original Adversary Complaint is attached as Exhibit B.

DATED:  November 18, 2024

          Respectfully submitted,

          CHAPMAN AND CUTLER LLP

          By: _____
                 Eric Silvestri

Eric Silvestri (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
320 South Canal
Chicago, Illinois 60606
(312) 845-3000
silvest@chapman.com