# EXHIBIT 2



Green Crescent LLC
8 The Green, Suite 4710
Dover, DE 19901

Telephone: (302) 219-0151
U.S. Toll Free: (800) 735-9620
admin@greencrescent.com
https;//www.greencrescent.com

# Certificate of Translation

This is to certify that the document entitled:

## Def's Ex. (2 - Shtar Props - May 2014)[59]

has been translated accurately from the original Hebrew into English.

This translation is an accurate translation and faithful reproduction of the original wherein the meaning, message, and purpose are satisfactorily communicated. A professional translator accomplished in realizing the goals for which translation is performed realized this translation.

This certificate is issued together with the delivery of said translation on November 11, 2024.

*[signature]*

Jonathan W. Fabian

Project Manager

**Partnership Deed and Agreement**

**Between Rabbi Yoel Goldman, hereinafter referred to as Party A,
And Rabbi Yitzchak Moshe Engelman, hereinafter referred to as Party B**

We, the undersigned, hereby acknowledge, fully and without reservation, as if testifying before an esteemed court, that we irrevocably commit to the terms in this document, and our signatures below shall serve as evidence, equivalent to a hundred credible witnesses, affirming that we have agreed voluntarily, without any coercion, to all terms set forth in this document.

**A]** The aforementioned parties have joined together and acquired the buildings listed below, and Party A represents the other partners in the buildings specified in this document. Party A hereby confirms Party B's ownership rights in the following buildings:

1. The building located at 238 Troutman Ave., recorded with the municipality under the corporation name 238 Troutman LLC, with a share of 25%.
2. The building located at 242 Troutman Ave., recorded with the municipality under the corporation name 242 Troutman LLC, with a share of 25%.
3. The building located at 239 Troutman Ave., recorded with the municipality under the corporation name 239 Troutman LLC, with a share of 50%.
4. The building located at 247 Troutman Ave., recorded with the municipality under the corporation name 247 Troutman LLC, with a share of 50%.
5. The building located at 192 Jefferson Ave., recorded with the municipality under the corporation name 192 BSD Realty, with a share of 25%.
6. The building located at 1012 Willoughby Ave., recorded with the municipality under the corporation name 1012 Willoughby LLC, with a share of 25%.
7. The building located at 461 Park Place, recorded with the municipality under the corporation name 461 Park Place LLC, with a share of 25%.
8. The building located at 469 Park Place, recorded with the municipality under the corporation name 469 Park Place LLC, with a share of 25%.
9. The building located at 79 South 6th St., recorded with the municipality under the corporation name 79 South 6th St. LLC, with a share of 25%.
10. The building located at 574 Broadway, recorded with the municipality under the corporation name 574 Broadway LLC, with a share of 25%.
11. The building located at 227 Grand Ave., recorded with the municipality under the corporation name 12 Grand Living LLC, with a share of 12.25%.
12. The building located at 277 Classon Ave., recorded with the municipality under the corporation name 277 Classon LLC, with a share of 50%.

13. The building located at 591 Franklin Ave., recorded with the municipality under the corporation name 591 Franklin LLC, with a share of 50%.

14. The building located at 892 Myrtle Ave., recorded with the municipality under the corporation name Y&M Management LLC, with a share of 33.33%.

**B]** The partnership between the aforementioned parties is a complete partnership for both profits and losses in accordance with all partnership laws, and the profits shall be divided among the parties in proportion to each party's share in the partnership.

**C]** It is agreed between the parties that this agreement is binding, and even though Party B's rights are not registered in the official legal documents of the corporation, this clause does not detract from Party B's rights in any way. At any time, Party B wishes for his name to be registered on the corporation's official legal documents, his rights shall be promptly registered in those documents.

**D]** If either party wishes to sell their share in the aforementioned buildings, the other party shall have the right of first refusal to purchase the share at the prevailing market rate.

**E]** This document nullifies any previous agreements made between the parties concerning the aforementioned buildings and serves as the definitive agreement.

This entire agreement has been formalized through a binding acquisition with a valid object for acquisition, executed in the most effective manner according to our sacred Torah, and is hereby effective immediately and established before a respectable court. It is not a mere contingency, nor a formality of documentation, nor an empty promise, and all conditions are in accordance with the regulations instituted by the Sages, written with binding force and intent. This partnership deed and agreement carries the same force as all partnership deeds and agreements customary among the Jewish people, crafted according to the principles of Halachic standards, with binding commitments on each party's person and property. Any ambiguity in the language of the document shall be interpreted in favor of the document's validity. Anyone challenging this document shall have no standing, as if they challenge a decision made by a court; their objections shall hold no legal weight either under Jewish law or secular courts. The parties also agree to abide by any individual opinion that upholds the validity of the document. All of this has been done willingly, without any coercion, nullifying all prior declarations, now and forever.

In witness whereof, we have signed on the _____ day of the month of _____ in the year 5774, with all herein valid and established.

Signature: _____

Signature: _____

**Partnership Deed and Agreement**

Between Rabbi Yoel Goldman, hereinafter referred to as Party A,
And Rabbi Safra Spielman and Rabbi Yitzchak Moshe Engelman (Alexander), hereinafter collectively referred to as Party B

We, the undersigned, hereby acknowledge, fully and without reservation, as if testifying before a distinguished court, that we irrevocably commit to the terms in this document. Our signatures below serve as evidence, equivalent to a hundred credible witnesses, that we have agreed voluntarily, without any coercion, to all terms set forth in this document.

**A)** Party A has invested funds in a contract for the property located at 82 Jefferson St., Brooklyn, N.Y. The parties have agreed to jointly acquire this building under the conditions set forth in this document, establishing a partnership between them according to the principles of Torah law.

**B)** The purchase price of the building is $3,100,000, with an additional $100,000 for the closing costs, totaling no more than this amount. Party B is obligated to invest a minimum of $1,800,000 for the closing, while Party A will contribute the remaining funds via a loan.

**C)** If Party B invests the entire amount of $3,200,000 for purchasing the lot, including the closing costs (with the intention of completing the closing without a mortgage to benefit the business), Party A is obligated, upon completion of the building's structure, to return up to half of Party B's investment up to that point in the partnership.

**D)** Party B is not required to invest more than a total of $3,200,000.

**E)** The parties are equal partners, with each holding a 50% stake in the partnership; Party A owns 50%, and Party B owns 50%. This partnership is a full partnership in accordance with partnership law, sharing both profits and losses.

**F)** The parties agreed that Party B will handle the project from start to finish, including building a structure on the designated lot. All responsibilities rest solely with Party A, including plans, permits, construction, and securing the construction loan, with Party A managing the procurement and repayment of the loan.

**G)** Although Party B holds a 50% stake in the partnership, each member of Party B will hold a percentage according to their individual investment in the building. Each individual's share will reflect their specific investment. (To date, Party B has invested $590,000 in the project through a 1031 exchange.)

**H)** After construction is completed, a mortgage (refinance) will be obtained from a bank. Initially, the construction loan will be repaid, and then each party's investment will be reimbursed. Rental income will first be used to reimburse the parties for their investments, and any remaining profits will be distributed according to each party's share in the partnership.

**I)** It is agreed that 30 months after the closing date, Party A is required to repay Party B half of their investment in the partnership. If Party A does not repay Party B this amount by the 30-month mark, Party A's share will decrease by 2% per month, equaling a 1% reduction in the overall partnership, which will be added to Party B's share.

**J)** It is agreed that although the corporation is registered in Party A's name, this does not diminish Party B's rights in any way. The corporation is in Party A's name for practical reasons only, and if Party B wishes for their rights to be formally registered in the corporation's records, Party A will promptly register Party B's name in the corporation.

This entire agreement has been formalized through a binding acquisition with a valid object for acquisition, executed in the most effective manner according to our sacred Torah, and is hereby effective immediately and established before a respectable court. It is not a mere contingency, nor a formality of documentation, nor an empty promise, and all conditions are in accordance with the regulations instituted by the Sages, written with binding force and intent. This partnership deed and agreement carries the same force as all partnership deeds and agreements customary among the Jewish people, crafted according to the principles of Halachic standards, with binding commitments on each party's person and property. Any ambiguity in the language of the document shall be interpreted in favor of the document's validity. Anyone challenging this document shall have no standing, as if they challenge a decision made by a court; their objections shall hold no legal weight either under Jewish law or secular courts. The parties also agree to abide by any individual opinion that upholds the validity of the document. All of this has been done willingly, without any coercion, nullifying all prior declarations, now and forever.

In witness whereof, we have signed on the __19th__ day of the month of Heshvan, 5774, with all herein valid and established.

_____ Party A

_____ Party B

**Investment Agreement and Contract**
Between Rabbi Yitzchak Moshe Engelman, hereinafter referred to as Party A,
And Rabbi Yoel Goldman, hereinafter referred to as Party B

We, the undersigned, hereby acknowledge, fully and without reservation, as if testifying before a distinguished court, that we irrevocably commit to the terms in this document, and our signatures below shall serve as evidence, equivalent to a hundred credible witnesses, affirming that we have agreed voluntarily, without any coercion, to all terms set forth in this document.

Party B has received $500,000 from Party A as an investment structured in accordance with the enactments of the Sages (Hazal), comprising half as a loan and half as a deposit. Party B shall invest this amount in a profitable and suitable business of his choosing, with profits and losses shared equally. It is agreed that Party B cannot claim any loss of principal without the testimony of two reliable and credible witnesses, nor may Party B claim any profit without taking a formal oath, in accordance with the enactments of Rabbi Meir of Rothenburg of blessed memory. However, it is agreed that if Party B pays Party A $10,000 at the beginning of each month, then Party B shall be released from any obligation to share further profits, with all additional profits belonging solely to Party B. All matters of accountability are entrusted to Party A, and Party B is not authorized to claim full or partial repayment against this agreement as long as the document remains in the possession of Party A, except upon issuance of a receipt. Furthermore, the assumption is that any gains or losses shall be deemed as profit. Party B has received compensation for his efforts, and the partnership continues until the principal sum of $500,000 is repaid in full to Party A.

This entire agreement has been formalized through a binding acquisition with a valid object for acquisition, executed in the most effective manner according to our sacred Torah, and is hereby effective immediately and established before a respectable court. It is not a mere contingency, nor a formality of documentation, nor an empty promise, and all conditions are in accordance with the regulations instituted by the Sages, written with binding force and intent. This partnership deed and agreement carries the same force as all partnership deeds and agreements customary among the Jewish people, crafted according to the principles of Halachic standards, with binding commitments on each party's person and property. Any ambiguity in the language of the document shall be interpreted in favor of the document's validity. Anyone challenging this document shall have no standing, as if they challenge a decision made by a court; their objections shall hold no legal weight either under Jewish law or secular courts. The parties also agree to abide by any individual opinion that upholds the validity of the document. All of this has been done willingly, without any coercion, nullifying all prior declarations, now and forever.

In witness whereof, we have signed on the _____ day of the month of _____ in the year 5774, with all herein valid and established.

_____ Party A

_____ Party B