UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>    ALL YEAR HOLDINGS LIMITED,<br><br>                      Debtor. | **NOT FOR PUBLICATION**<br><br>Case No. 21-12051 (MG)<br><br>Chapter 11 |
| AYH WIND DOWN LLC, through Ofer Tzur and Amir Flamer, solely in their joint capacity as Claims Administrator,<br><br>                      Plaintiff,<br><br>    v.<br><br>ALEXANDER M. ENGELMAN,<br><br>                      Defendant. | Adv. Pro. No. 23-01196 (MG) |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS**

*A P P E A R A N C E S:*

CHAPMAN AND CUTLER LLP
*Attorneys for AYH Wind Down LLC, through Ofer Tzur and Amir Flamer, solely in their joint capacity as Claims Administrator*
1270 Avenue of the Americas
30th Floor
New York, New York, 10020
By:   Michael Friedman, Esq.

320 South Canal Street
Chicago, Illinois 60606
      David Audley, Esq.
      Eric Silvestri, Esq.

TWERSKY PLLC
*Attorneys for Alexander M. Engelman*
747 Third Avenue
32nd Floor
New York, New York 10017
By:   Aaron Twersky, Esq.
       Ilana Neufeld, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested motion (the "Motion," ECF Doc. # 33)[1] of defendant Alexander M. Engelman ("Engelman" or the "Defendant"), seeking dismissal of all counts of the first amended adversary complaint (the "Amended Complaint," ECF Doc. # 31) filed by AYH Wind Down LLC ("Wind Down" or "Plaintiff") through Ofer Tzuer and Amir Flamer, jointly in their capacity as Claims Administrator.  The Amended Complaint was filed in the above-captioned adversary proceeding (the "Adversary Proceeding") pursuant to the confirmed *Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited* (the "Plan," Case No. 21-12051, ECF Doc. # 352-1 and the related disclosure statement, the "Disclosure Statement," Case No. 21-12051, ECF Doc. # 157) of All Year Holdings Limited (the "Debtor") in its chapter 11 bankruptcy case (the "Chapter 11 Case").[2]

The Plaintiff filed a memorandum of law in opposition to the Motion (the "Opposition," ECF Doc. # 36).  The Defendant filed a reply (the "Reply," ECF Doc. # 37).

For the reasons discussed below, the Court **DENIES** the Motion.

---

[1]    Unless otherwise indicated, docket references shall refer to those in the above-captioned adversary proceeding. Additionally, defined terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.
[2]    *In re All Year Holdings Limited*, Case No. 21-12051 (MG) (Bankr. S.D.N.Y. December 14, 2021).

2

I.     BACKGROUND

The following facts are drawn from the Plan, Disclosure Statement, and/or and the Amended Complaint, except where otherwise indicated.

**A. The Chapter 11 Case**

The Debtor was founded by Yoel Goldman ("Goldman") in 2014 as a holding company focused on the development, construction, acquisition, leasing, and management of residential and commercial properties in Brooklyn, New York. (Disclosure Statement at 7–8.) Prior to the commencement of the Chapter 11 Case, the Debtor owned approximately 110 properties through its various direct and indirect subsidiaries, consisting of over 1,000 residential and commercial units in the neighborhoods of Bushwick, Williamsburg, and Bedford-Stuyvesant. (*Id.*) The Debtor historically obtained funds through debt issuances, asset sales, and the operations of its non-debtor, property-level subsidiaries. (*Id.* at 8.)

Due to its high-leverage business model, the Debtor "eventually began to struggle to service its significant funded debt burden." (*Id.* at 15.) The Debtor made initial efforts to "implement . . . de-leveraging transactions" in early 2020, but it found itself adversely affected by the onset of the COVID-19 pandemic given that its revenues were derived primarily from residential and commercial rental income streams. (*Id.*) The Debtor's subsidiary holdings also experienced significant liquidity challenges that placed further stress on non-debtor subsidiaries and the "Debtor's entire enterprise." (*Id.*) Ultimately, "the Debtor's current and projected revenues remained insufficient to service its debt," and the Debtor accordingly commenced the Chapter 11 Case on December 14, 2021 (the "Petition Date"). (*Id.* at 1, 15.) The Court confirmed the Debtor's Chapter 11 plan of reorganization on January 31, 2023. (Case No. 21-12051, ECF Doc. ## 352, 449.)

**B. The Adversary Proceeding**

*1. Initial Procedural History*

The Plaintiff initiated the Adversary Proceeding on November 10, 2023, asserting one claim against the Defendant for breach of a promissory note. (ECF Doc. # 1.) The Defendant filed a motion to dismiss the Adversary Proceeding, which this Court denied on March 26, 2024. (ECF Doc. ## 11, 14.) The same day, the Court entered a Case Management and Scheduling Order establishing, *inter alia*, deadlines and procedures for discovery and motions. (ECF Doc. # 15.) The Court subsequently amended the Case Management and Scheduling Order to provide the parties additional time to complete fact discovery and schedule an additional case conference. (ECF Doc. # 19.) The Plaintiff subsequently filed a contested motion to amend its complaint to include additional claims based on documentation identified for the first time during fact discovery. (ECF Doc. ## 25, 27.) The Court granted the Plaintiff's motion to amend. The Plaintiff filed the Amended Complaint. (ECF Doc. ## 30, 31.)

*2. The Amended Complaint*

Plaintiff alleges that, on April 4, 2017, Engelman executed a promissory note (the "Promissory Note")[3] in the principal amount of $3,000,000 in favor of the Debtor. (Amended Complaint ¶ 12.) The terms of the Promissory Note included a maturity date of April 4, 2018, with interest computed at an annualized rate of fifteen percent (15%). (*Id.* ¶ 14.) Pursuant to the Promissory Note, the Debtor allegedly distributed $3,000,000 to Engelman "or an entity he controlled." (*Id.* ¶ 13.) On February 1, 2022, the Debtor's counsel issued a demand letter[4] directing Engelman to remit to the Debtor the full amount owed under the Promissory Note. (*Id.* ¶ 15.) At that time, Engelman purportedly owed the Debtor $5,205,000 under the Promissory

---

[3]   The Promissory Note is appended to the Amended Complaint as Exhibit A.
[4]   The demand letter is appended to the Amended Complaint as Exhibit B.

4

Note, consisting of $3,000,000 of outstanding principal and $2,205,000 in outstanding interest. (*Id.* ¶ 16.) The Plaintiff claims that, as of the filing of the Amended Complaint, the amount owed under the Promissory Note had increased to a total of no less than $6,472,500, consisting of the $3,000,000 principal amount and $3,472,500 in outstanding interest. (*Id.* ¶ 17.) To date, Engelman has not made any payments on the Promissory Note. (*Id.* ¶ 43.)

The Amended Complaint indicates that Engelman denies any repayment obligations under the Promissory Note on the basis of certain "agreements with Yoel Goldman executed in either 2013 or 2014," which purportedly "entitle [Engelman] to certain profits realized from various investment properties" with Goldman. (*Id.* ¶ 25.) According to Engelman, these profits entitled him to "distributions" from the "business activity" surrounding the applicable investment properties which were credited against the balance of the Promissory Note, such that Engelman's repayment obligations thereunder were eventually "extinguished." (*Id.* ¶ 24.) Engelman asserts that these reductions to his loan balance were made beginning on March 9, 2017, and reduced his obligations by February 2, 2018, approximately two months before the Promissory Note's stated maturity date. (*Id.* ¶¶ 14, 44–45.)

As evidence of this entitlement, Engelman purportedly relies upon a secret "partnership agreement," which Goldman claims was executed in 2013 or 2014 (the "Partnership Agreement").[5] (*Id.* ¶ 28.) The Amended Complaint provides that the Partnership Agreement, which is written in Yiddish, does not bear Engelman's signature. (*Id.*) However, the Partnership Agreement provides that Engelman is entitled to profits generated by certain named LLCs—notwithstanding Engelman's apparent absence from the applicable corporate governance

---

[5] A certified English translation of the Partnership Agreement was appended to the Plaintiff's declaration in support of its Motion to Amend the Complaint. (ECF Doc. # 26 at Exhibit 2.)

5

documents (including capitalization tables, membership and manager lists, and operating agreements). (*Id.* ¶¶ 29–32.)

Plaintiff presumes that Goldman did not ever disclose the existence of the Partnership Agreement to anyone at the Debtor or the Debtor's creditors, instead seeking to "shroud the [Partnership Agreement] from view hinder, delay, and/or defraud both the Debtor itself and its creditors." (*Id.* ¶¶ 35–36.) Specifically, Plaintiff identifies March 2017 correspondence in which Goldman identified to Engelman, as a precondition to the Promissory Note, "the need to make something for the bonds . . . [l]ike on which building the loan is on officially." (*Id.* ¶¶ 38–39.) The Plaintiff asserts that this precondition, which Engelman accepted, served the exclusive purpose of "disguis[ing] the loan from the Debtor's and its creditors' view." (*Id.* ¶ 40–41.)

The Amended Complaint asserts four causes of action as follows:

- <u>Count I</u> – Breach of the Promissory Note for Engelman's failure to pay amounts due thereunder. (Amended Complaint ¶¶ 18–22.)

- <u>Count II</u> – Fraudulent transfer claim pursuant to N.Y. Debtor & Creditor Law § 276. (*Id.* ¶¶ 23–55.)

- <u>Count III</u> – In the alternative, unjust enrichment. (*Id.* ¶¶ 56–61.)

- <u>Count IV</u> – In the alternative, money had and received. (*Id.* ¶¶ 62–67.)

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, states that a cause of action must be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007). The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss, courts may consider "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).

Courts also may "take judicial notice of matters of public record, including filings in related lawsuits." *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) (citations omitted). Bankruptcy courts may take judicial notice of prior decisions or filings in the same bankruptcy case. *See, e.g.*, *In re AMR Corp.*, 567 B.R. 247, 250 & n.7 (Bankr. S.D.N.Y. 2017) (taking judicial notice of prior decisions in "several different adversary proceedings in th[e] bankruptcy" for purposes of considering a motion to dismiss an adversary complaint); *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, 2020 WL 3067733, at *7 (Bankr. S.D.N.Y. June 8, 2020) (similar).

Finally, courts may consider documents that, although not expressly referenced in the complaint, are "nevertheless 'integral' to the complaint." *Goel*, 820 F.3d at 559. "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation omitted). The "integral" material is typically "a contract or other legal document

7

containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim was not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Consideration of such "integral" documents thus "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.*

### B.  Rule 9(b) Particularity Standard

Federal Rule of Civil Procedure 9(b) heightened pleading standard, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009,[6] requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In fraudulent transfer actions, courts have found that Rule 9(b) requires plaintiffs to describe the specific injury and the legal theories made the basis of its claims in a manner that allows the defendant to prepare an effective answer or defense. *Am. Tissue, Inc. v Donaldson, Lufkin & Jenrette Sec. Corp.,* 351 F. Supp. 2d 79, 107 (S.D.N.Y. 2004).

### III.  DISCUSSION

For the reasons explained below, the Court **DENIES** the Motion in its entirety.

### A.  Breach of Promissory Note

Under New York law, the elements of a breach of contract claim are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011). The Defendant contends that this claim must be dismissed because he "never signed a promissory note in this case." (Motion at 8.) The

---

[6]  Rule 9(b) applies only to the intentional fraudulent transfer claims in Counts III and IV. *See Sharp Int'l Corp. v. State Street Bank & Trust Co.,* 403 F.3d 43, 55 (2d Cir.2005).

Defendant acknowledges that Exhibit A to the Amended Complaint purports to be a Promissory Note executed by the Defendant, but he contends that "this fraudulent Promissory Note was likely forged and was certainly never signed by Defendant." (*Id.* at 9.) However, under New York law, the signature on a promissory note is presumed to be authentic and genuine, consistent with Federal Rule of Evidence 902. *See* N.Y. U.C.C. Law § 3-307; FED. EVID. R. 902(9). The Defendant's contention regarding the authenticity of the Promissory Note is not an appropriate basis for dismissal on a Rule 12(b)(6) motion. Accordingly, the Defendant has failed to rebut the first element, the existence of the Promissory Note.

The Amended Complaint satisfies the other elements of the claim. It is undisputed that the Plaintiff advanced the funds, with constitutes performance under the contract. (Amended Complaint ¶ 13; Motion at 5.) The Amended Complaint further asserts that the Defendant has failed to pay the Note following maturity and a demand for payment, resulting in damages comprised of the outstanding principal and accumulating interest. (Amended Complaint ¶¶ 14–22.) Accordingly, the Amended Complaint plausibly states a claim for breach of contract.

### B. Fraudulent Transfer

Under N.Y. DEBTOR & CREDITOR LAW § 276 (as it existed prior to 2020, when the underlying alleged transfers took place), a plaintiff must allege a plausible set of facts that a conveyance was made with the actual intent to hinder, delay, or defraud either present or future creditors, which may rely on certain badges of fraud sufficient to infer such intent. N.Y. DEBT. & CRED. LAW § 276 (effective until April 2020). The "badges of fraud" upon which a plaintiff may rely include "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control

9

of the property by the transferor after the conveyance." *SSC NY Corp. v. Computershare Inc.*, 224 A.D.3d 620, 621, 206 N.Y.S.3d 282, 284 (2024).

The Defendant contends that the Plaintiff "offers no specific facts or proof regarding Defendant's intent." (Motion at 12.) In support of that contention, the Defendant argues that fair consideration was paid for the alleged "distributions" which purportedly reduced Engelman's balance under the loan. (*Id.* at 12–15.) The Defendant also notes that there is no "close or related relationship" between Engelman and Goldman, as the two have no familial ties, nor is Engelman a shareholder of the Debtor. (*Id.* at 15.)

The Amended Complaint, however, identifies multiple badges of fraud sufficient to plead the existence of a fraudulent transfer scheme with particularity. Specifically, the Plaintiff identifies an email in which Goldman indicated that he and Engelman would need to "make something for the bonds. Like on which building the loan is officially." (Amended Complaint ¶ 38.) This exchange supports the secrecy or unusual nature of the transaction. In fact, the Amended Complaint alleges that the distributions to which the Defendant asserts he was entitled were based upon a "secret" Partnership Agreement, which purports to provide the Defendant with distributions related to properties with which the Defendant had no official role or relationship as documented in capitalization tables, operating agreements, or other corporate documents. (Amended Complaint ¶¶ 29-32.) When asked about the Secret Partnership Agreement during his deposition, Goldman repeatedly asserted his Fifth Amendment rights. (Amended Complaint ¶ 33.) These circumstances collectively indicate that the transaction involving Engelman was a "questionable transfer not in the usual course of business."

Additionally, while the Defendant may wish to contest the adequacy of consideration remitted in exchange for the Promissory Note, the Amended Complaint adequately alleges, for

10

the purpose of a motion to dismiss, that Engelman did not provide any consideration to the Debtor for his purported shares of profits in the underlying real estate portfolio. (Amended Complaint ¶ 26.) Indeed, the Defendant acknowledges that he entered into agreements with Goldman personally, rather than for the benefit of the Debtor. (Motion at 9–10.)

Accordingly, the Amended Complaint adequately states a claim for fraudulent transfer under New York law.

### C. Unjust Enrichment and Money Had and Received

The Defendant contests the remaining alternative claims asserted by the Plaintiff as inapt given the existence of a contractual relationship via the Promissory Note. (Motion at 12–13.) However, the Plaintiff has properly pleaded these theories as claims in the alternative, which may be considered "[i]n the event the Court were to rule that no contract existed or that the [Promissory] Note was for any reason unenforceable or invalid." (Amended Complaint ¶¶ 57, 63.) As such, the Defendant's argument for dismissal of these claims is insufficient to grant dismissal at this stage.

### IV. CONCLUSION

For the foregoing reasons, the Motion is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated: April 25, 2025
       New York, New York

                                              *Martin Glenn*
                                          MARTIN GLENN
                                  Chief United States Bankruptcy Judge